UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PETER T. LITTLEFAIR,<br><br>        Plaintiff,<br><br>   v.<br><br>ARNE GOSNER, in his individual and public capacity; SKAMANIA COUNTY SHERIFF'S OFFICE; and SKAMANIA COUNTY,<br><br>        Defendants. | CASE NO. C08-5476BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment. Dkt. 10. The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the record, and grants the motion for the reasons stated herein.

**I. FACTUAL BACKGROUND**

At all times relevant, Plaintiff owned two adjacent parcels of property on Gordon Road in a rural area of Hemlock, Washington. The western property was Lot # 401 and the eastern property was Lot # 403. Plaintiff marked the corners of his property with red metal stakes, approximately four feet high, marked with the letters "PL" which stood for "property line." Dkt. 11-3 at 28 (Exhibit J) (Plaintiff's testimony at prior court proceeding). Gordon Road is a dirt and gravel road, and represents the southern boundary line of Plaintiff's property. *Id*. at 27. There is a fire line just south of Gordon Road.

ORDER - 1

Gordon Road ends in a small cul-de-sac. At some point, the cul-de-sac was extended to the east into a driveway[1] culminating in a second turnaround on Plaintiff's property, next to which Plaintiff's residence was located. The eastern boundary of Lot # 403 was not marked, but Plaintiff considered a tree line to constitute the marker for the eastern property line. *Id.* at 31. There are no fences or signs posted on the southern or eastern boundaries of Plaintiff's properties. *Id.* at 30. According to Plaintiff, there are no markers, other than Gordon Road and the tree line, representing the respective southern and eastern property lines. *Id.* at 31.

The land directly to the south and to the east of Plaintiff's property were clear-cut parcels owned by Longview Fibre Company. Defendant Arne Gosner, a Skamania County Sheriff's Office sergeant, lived across a river from Plaintiff's property. Plaintiff alleges that from Sergeant Gosner's home, he had an "unobstructed view" of Plaintiff's property and the Longview Fibre property. Dkt. 1 at 3.

**A. SERGEANT GOSNER'S AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

On December 28, 1995, Sergeant Gosner filed an affidavit in support of a search warrant. Dkt. 11-2, 22-31. According to the affidavit, in January 1990, a sergeant and a confidential informant purchased marijuana from Plaintiff at Plaintiff's residence during a controlled buy. *Id.* at 25. In February 1992, Sergeant Gosner learned from a retired sheriff that a confidential informant had reported Plaintiff's involvement in growing marijuana, meter tampering, and the trafficking of controlled substances through the Portland International Airport. *Id.* The following month, Sergeant Gosner conducted surveillance on Plaintiff's residence. Based on observations made from outside the residence, there was no indication of a marijuana grow operation. However, Sergeant Gosner looked at Plaintiff's Public Utility District ("PUD") meter and noticed the seal on

---

[1] Plaintiff claims that the composition of the driveway is only dirt, as opposed to the composition of Gordon Road, which is dirt and gravel.

the meter was broken. *Id*. Sergeant Gosner maintained that based on his training, knowledge and experience, a tampered meter might indicate a "power bypass" or a person trying to make it look like less power was being consumed. *Id*. Sergeant Gosner stated that high power use and meter tampering can be indicators of a grow operation, because high pressure lights and other equipment used to grow marijuana use significant power.

In November 1992, Sergeant Gosner received a phone call from a United States Drug Enforcement Postal Inspector assigned to the Portland Airport. The inspector informed Sergeant Gosner that he believed Plaintiff had mailed packages from the airport that were later intercepted and found to contain marijuana.

In January 1993, Sergeant Gosner received an anonymous tip saying Plaintiff was again dealing controlled substances. In January 1995, Sergeant Gosner was contacted by a confidential informant who claimed to have information from another individual that Plaintiff was operating a grow operation on Longview Fibre property located adjacent to Plaintiff's residence. *Id*. at 26. The informant told Sergeant Gosner that the grow operation was underground and concealed, and advised Sergeant Gosner to "go onto Longview Fibre land and find a pile of wood and a bunch of barrels next to Littlefair's driveway and [law enforcement] would find [Plaintiff's] grow." *Id*.

Sergeant Gosner then went to the Skamania County Assessor's Office and obtained a map of the area where Longview Fibre and Plaintiff's property are located. *Id*. Sergeant Gosner stated in the affidavit that Plaintiff owned "two parcels of land side by side to the north of Gordon road. Longview Fibre owns all property to the south of Gordon Road." *Id*.

On January 23, 1995, with permission from Longview Fibre, Sergeant Gosner and Deputy Chris Ford entered Longview Fibre property and located the "area described by the informant." *Id*. Sergeant Gosner stated that "approximately 10-15 feet south of Gordon road" were several stacks of lumber and debris, as well as two 55-gallon drums. Inspecting the drums, Sergeant Gosner located "what appeared to [be] a venting system"

under one drum. Sergeant Gosner also stated that the area had a "very faint odor" of what he believed to be marijuana, but due to strong winds, he was not comfortable submitting an affidavit for a search warrant based solely on the odor. *Id*. Sergeant Gosner further observed a worn path easily accessible from Plaintiff's residence. *Id*.

In December 1995, Sergeant Gosner received an anonymous tip saying that Plaintiff was possibly mailing marijuana through the Carson Post Office. On December 21, 1995, Sergeant Gosner and Reserve Officer Will Harryman went back to the Longview Fibre property. *Id*. Sergeant Gosner maintains that from a vantage point approximately 20 feet to the west of the barrels, he detected a "very strong odor" of marijuana. *Id*. Approximately 10 to 15 feet away from the barrels, under a stack of lumber, Sergeant Gosner located a black plastic pipe that had warm air blowing out of it "with a very strong odor of green marijuana." *Id*.

On December 28, 2005, Sergeant Gosner prepared the affidavit for a search warrant of the underground container, Plaintiff's residence, and other areas on Plaintiff's property. In support of his affidavit, Sergeant Gosner included a copy of the assessor's map with an asterisk marking what Gosner represented as the appropriate location of the underground container. Dkt. 11-2 at 31 (Exhibit E). According to the map, the asterisk is located on Longview Fibre property, just to the south of Plaintiff's property line. *Id*.[2] As it turned out, the barrels were actually located on Plaintiff's property.

The search warrant was executed on December 29, 2005. *Id*. at 33 (Exhibit F) (search warrant); *id*. at 38 (Exhibit H) (search warrant statement return of service). According to Sergeant Gosner, a Longview Fibre security officer was present at the execution of the search warrant as a representative for Longview Fibre. *Id*. at 18 (deposition of Sergeant Gosner).

---

[2] The map does not show the driveway extension.

ORDER - 4

## B. PLAINTIFF'S CRIMINAL PROCEEDINGS

In March 1996, Plaintiff was charged by information with one count of manufacturing marijuana and one count of possessing marijuana with intent to deliver. In August 1996, Plaintiff filed a motion to suppress and dismiss the drug charges against him on the theory that Sergeant Gosner's affidavit in support of the search warrant did not support a finding of probable cause. Plaintiff argued that Sergeant Gosner's statements in his affidavit that the underground grow operation was located on Longview Fibre property and that he was on Longview Fibre property when he smelled green-growing marijuana were false, invalidating the search warrant and all evidence seized pursuant thereto under *Franks v. Delaware*, 438 U.S. 154 (1978).

A suppression hearing was held on August 29, 1996. Plaintiff testified that the underground container was actually located on his property, not on Longview Fibre property as Sergeant Gosner had represented. Plaintiff stated that the southern and eastern boundary lines of his property were demarcated by two tree lines. Dkt. 11-3 at 31. However, Plaintiff acknowledged that he did not have any signs posted on either the east or the south sides of his property and that he did not place any barriers or fences to keep people from crossing over into his property from Longview Fibre's property. *Id*. at 30. Plaintiff also testified that Gordon Road is a dirt road that travels approximately three quarters of the way down Plaintiff's southern property line and ends in a small turnaround. Finally, Plaintiff testified that sometime in the late 1970s, a dirt driveway was put in on Lot 403 (the easternmost of Plaintiff's two lots), extending Gordon Road up and to the northeast of Plaintiff's property.

Surveyor Richard Bell testified on behalf of Plaintiff. Mr. Bell testified that the underground container was located ten feet from the southern boundary line and sixteen feet from the eastern boundary line of Plaintiff's property, placing the container in the far southeast corner of Plaintiff's property. Dkt. 11-3 at 34. Bell noted that the southern boundary line of Plaintiff's property was obvious to him because he was a professional

surveyor and that the eastern boundary line would be even more difficult for someone to discern.

Sergeant Gosner also testified at the suppression hearing. Sergeant Gosner testified that in December 1995 when he went onto Longview Fibre's property, approaching Plaintiff's property on foot from the south traveling north, he looked for, but did not find, any corner posts to indicate a property line. *Id*. at 39. Because he did not see any corner stakes, he relied on the map that he had obtained from the assessor's office to determine his location. *Id*. He also noted that he conducted his surveillance of Plaintiff's property and the underground container at nighttime to avoid detection. *Id*. When Sergeant Gosner was in the vicinity in December 1995, it was dark and it had been snowing. As a result, he stated that he did not observe either the tree line or the fire line that Plaintiff maintains marked the southern and eastern boundary lines of Plaintiff's property. *Id*. at 44.

Sergeant Gosner testified that he had located the underground container on Longview Fibre property based on his view of what he, at that time, believed to be Gordon Road, based on his reliance upon the assessor's map. He also stated that he based his knowledge of the whereabouts of the barrels on information provided by the confidential informant. *Id*. at 42. Sergeant Gosner stated that Gordon Road was the "point of interest," presumably meaning he believed that Plaintiff's property laid north of Gordon Road. *Id*. at 41. Sergeant Gosner maintained that he was unaware of the driveway extension because it was not depicted in the map he was using. As a result, Sergeant Gosner maintained that he believed the underground container was on Longview Fibre property and south of the Gordon Road turnaround. In reality, the underground container was located on Plaintiff's property.[3]

---

[3] Defendants maintain that the barrels were located south of Plaintiff's driveway, on Plaintiff's property. Plaintiff maintains that the barrels were located north of his driveway.

ORDER - 6

After hearing closing arguments, the trial court denied Plaintiff's motion to suppress by oral ruling. The trial court found that Sergeant Gosner believed that he was on Longview Fibre property based on his use of the incorrect assessor's map. According to the trial court, "it could have been very easy to understand a person's confusion, not realizing that the driveway extended from the cul-de-sac which was shown on [the assessor's map] as the termination of Gordon Road. And a person not knowing that could very easily presume that the driveway indeed was Gordon Road." The trial court further found that Sergeant Gosner's statement in his affidavit that he was on Longview Fibre property was made in good faith. Finally, the trial court judge observed video footage of the area and indicated that based on the video, it was easy to be confused about the location of Plaintiff's property line. *Id.* at 48. The trial court also noted the foliage that surrounded the area. *Id*. The trial court held that Plaintiff did not have an expectation of privacy in that particular portion of his property where the underground container was located.

Following the denial of his motion to suppress, Plaintiff pleaded guilty to one count of manufacturing marijuana and served his jail time.

In 1998, Plaintiff was again arrested on various charges, including driving under the influence, malicious mischief, and stalking Sergeant Gosner's family. Following his 1998 arrest, Plaintiff (who is not a United States citizen, but a permanent resident alien) was contacted by the Immigration and Naturalization Service, who advised Plaintiff that it would begin deportation proceedings because of his felony conviction. Because Plaintiff is a permanent resident alien, a felony conviction is a deportable offense.

In May 1999, Plaintiff moved the trial court to allow him to withdraw his guilty plea to the marijuana charge, arguing that he had never been advised that his guilty plea would subject him to possible deportation. The trial court denied the motion and Plaintiff appealed. In *State v. Littlefair*, 112 Wn. App. 749, 765, 51 P.3d 116 (2003), *rev. denied*, 149 Wn.2d 1020 (2003), Division II of the Court of Appeals of Washington held that Plaintiff should have been advised of 'the immigration consequences' of his plea and that

ORDER - 7

the trial court erred in denying his motion to withdraw the plea. The court vacated Plaintiff's plea and sentence and remanded the case for further proceedings.

In late 2003, Plaintiff was tried on the two counts of unlawful manufacture and possession with intent to deliver marijuana that he had been charged with in 1996. The jury returned its verdict in November 2003 and found Plaintiff guilty on both counts. Plaintiff appealed and in *State v. Littlefair,* 129 Wn. App. 330, 119 P.3d 359 (2005), Division II of the Court of Appeals of Washington reversed Plaintiff's conviction holding that Sergeant Gosner's foray onto Plaintiff's property in December 1995 was an unconstitutional search.

The appellate court identified the issue for appeal as whether Plaintiff "had a legitimate expectation of privacy in the area and whether society willingly recognizes that expectation as reasonable." *Id*. at 349. The appellate court concluded that the search was unconstitutional because Sergeant Gosner was on Plaintiff's property during the search, but stated that it was not addressing the issue of whether Sergeant Gosner acted in good faith.

## II. PROCEDURAL BACKGROUND

On July 30, 2008, Plaintiff filed a complaint. Dkt. 1. Plaintiff alleges the following claims under 42 U.S.C. § 1983: (1) deprivation of privacy; (2) deprivation of property; (3) deprivation of liberty; and (4) deprivation of due process. *Id*., 5-6. Plaintiff seeks over $1 million in damages. *Id*. at 7. Plaintiff alleges that Sergeant Gosner knew that he was on Plaintiff's property and deliberately deceived the issuing judge by omitting facts from the application for a search warrant. Plaintiff further alleges that Skamania County and the Sheriff's Department had a policy or custom that permitted this violation of Plaintiff's rights, and that these Defendants had the "belief that there was a legal good faith exception to permit mistaken trespass upon private property to obtain evidence for a search warrant." *Id*. at 5.

On June 10, 2009, Defendants filed a motion for summary judgment. Dkt. 10. Defendants move to dismiss all of Plaintiffs claims, contending that (1) Sergeant Gosner

ORDER - 8

is entitled to qualified immunity, (2) Plaintiff has no competent evidence to support his claim that Skamania County should be held liable as a municipality, and (3) the Sheriff's Department is not a proper Section 1983 defendant. *Id.*

On June 30, 2009, Plaintiff filed a response. Dkt. 15. On July 10, 2009, Defendants filed a reply. Dkt. 16.

## III.  DISCUSSION

**A.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Under Rule 56(e)(1), "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In addition,

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

## B. PLAINTIFF'S CLAIMS AGAINST SERGEANT GOSNER

Defendants maintain that Sergeant Gosner is entitled to qualified immunity on all of Plaintiff's claims.

Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions. *Id*. at 819.

Where a plaintiff maintains a Section 1983 claim alleging false or omitted statements in a search warrant affidavit, the standard for qualified immunity is governed by *Franks v. Deleware*, 438 U.S. 154 (1978). *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997). To survive summary judgment, Plaintiff must (1) make a "substantial showing" of deliberate falsehood or reckless disregard for the truth, and (2) establish that, but for the dishonesty, the challenged action would not have occurred. *Id*. at 973 (*citing Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995)).

1    The Court concludes that Plaintiff fails to make a substantial showing of deliberate falsehood or reckless disregard for the truth on the part of Sergeant Gosner, and that Sergeant Gosner is entitled to qualified immunity.

Plaintiff first maintains that Sergeant Gosner deliberately omitted the fact that he lived across the river from Plaintiff's residence, from where had "commanding views" of Plaintiff's property. This argument fails. Plaintiff does not provide any evidence that Sergeant Gosner could view Plaintiff's property lines or the barrels from his residence. Plaintiff admits that there were no clear property markers designating the southern or eastern boundaries, so it is far from clear how Sergeant Gosner could have known that the barrels were located on Plaintiff's property based on observations made from Sergeant Gosner's residence. The Court also notes that the aerial pictures provided by Plaintiff show that Sergeant Gosner's residence is surrounded by trees and vegetation, undermining Plaintiff's claims that Sergeant Gosner had a commanding view of Plaintiff's property. *See* Dkt. 13 (aerial photographs).

Second, Plaintiff maintains that Sergeant Gosner omitted "the fact that he had access to aerial photographs" of the area he was investigating, because Sergeant Gosner had previously conducted surveillance flights over Plaintiff's property. This argument also fails. Plaintiff provides no evidence that Sergeant Gosner actually viewed these barrels during surveillance flights prior to submitting the search warrant affidavit. Moreover, even assuming that Sergeant Gosner viewed the depictions in the photographs prior to submitting the affidavit, there is no evidence that suggests that such a view conclusively demonstrates that the barrels were located on Plaintiff's property.[4]

---

[4] The Court also notes that, based on Plaintiff's designation of the location of the barrels in the aerial photographs, it appears that the barrels were in an open area and east of Gordon Road, undermining Plaintiff's claim that Sergeant Gosner must have crossed the road before locating the barrels. In any event, Plaintiff provides no authority for his apparent contention that law enforcement must first view aerial photographs before conducting surveillance, and this Court is not inclined to establish such a rule.

ORDER - 11

Third, Plaintiff maintains that Sergeant Gosner failed to adequately describe the "lay of the land" upon which the barrels were located. The Court concludes that the trial court's finding that Sergeant Gosner had a good faith belief that he observed the barrels while on Longview Fibre property is supported by the record in this case. In addition, while ultimately concluding that Sergeant Gosner conducted an illegal search because he was located on Plaintiff's property, the appellate court observed, "the property markers on the southeast corner of Littlefair's property were subtle and not readily apparent during the day but especially at night. Further, the southeast corner of Littlefair's property did not contain signage intended to alert the public of his desire for privacy." *Littlefair*, 128 Wn. App. at 342-43. The sole case provided by Plaintiff, *Liston*, *supra*, is not analogous to the facts of this case. In *Liston*, a law enforcement officer had conducted surveillance on a house, and failed to include in his application for a search warrant that a "for sale" sign was located outside the home. Before the search was conducted, the house was sold. After obtaining a warrant, police stormed the house, which was now occupied by new homeowners who were not the target of the search. In contrast, there is no evidence in this case that Sergeant Gosner was aware of any property line markers that he deliberately omitted from his application. Unlike *Liston,* where an officer failed to make a notation of an obvious "for-sale" sign located in front of a home, here there were no obvious markers indicating where Plaintiff's property began. In addition, Sergeant Gosner was relying on a map that did not include Plaintiff's private driveway. Finally, Sergeant Gosner conducted the surveillance at night, the property is located in a rural, forested area, and Sergeant Gosner was acting in reliance on information provided by a confidential informant.

Plaintiff cannot create a triable issue of fact by making conclusory statements that Sergeant Gosner "deliberately deceived" the judge who issued the warrant; there is no evidence in the record to support this assertion. The aerial maps do not assist Plaintiff in establishing a triable issue of fact. Plaintiff claims that these photographs demonstrate that Sergeant Gosner crossed over onto Plaintiff's property. *See* Dkt. 13. These

photographs do not assist Plaintiff in meeting his burden of demonstrating a substantial showing that Sergeant Gosner knowingly crossed Plaintiff's property line.

Fourth, Plaintiff maintains that Sergeant Gosner should have relied on the "Auditor's Second Map," which indicates that the barrels were located on Plaintiff's property. However, Plaintiff offers no evidence or arguments that the Assessor's map Sergeant Gosner relied upon was not authentic. A constitutional violation does not occur simply because the Sergeant chose not to rely on a map of Plaintiff's choosing.

**C. PLAINTIFF'S CLAIMS AGAINST SKAMANIA COUNTY**

Defendants move the Court to dismiss Plaintiff's claims against Skamania County because Plaintiff provides no evidence of an unconstitutional policy.

The language of Section 1983 is expansive and does not expressly incorporate common law immunities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 637 (1980). Municipalities and other local governing bodies, such as school districts, are subject to suit under Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Municipalities are not liable merely for employing tortfeasors, and respondeat superior is an insufficient basis for establishing municipal liability. *Monell*, 436 U.S. at 690. Rather, plaintiffs must establish that a policy or custom of the municipality caused the constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993). This requirement distinguishes acts of the municipality from acts of municipal employees. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

Plaintiff's claims against Skamania County fail. Plaintiff alleges that "there is evidence" that the county promotes a "good faith belief rule which readily lends itself to the predictable violation of the Constitutional Rights of Country Residents." Dkt. 15. Plaintiff has provided no evidence of any such policy, and cannot rely on mere allegations to survive summary judgment. Fed. R. Civ. P. 56(e).

## D. PLAINTIFF'S CLAIMS AGAINST SKAMANIA COUNTY SHERIFF'S DEPARTMENT

Finally, Plaintiff's claims against the Sheriff's Department are dismissed. Defendants maintain that in an action challenging the policies or customs of a local governmental unit, the proper defendant is the county or city, not the particular department where the alleged constitutional violation occurred. Dkt. 10 at 13 (*citing Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008)). Plaintiff did not contest this argument in his response. *See* Local Rule CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit").

## E. DEFENDANTS' MOTION TO STRIKE

Defendants move to strike the following paragraphs from Plaintiff's response: 10, 11, 12, 13, 14, 15, 16, 21, 22, 23, 24, 25, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 44, 45, 51, 53, 54, and 56, on grounds that the statements are mere conclusory statements and do not constitute admissible evidence under Rule 56(e). Defendants also move to strike paragraph 27 of Plaintiff's declaration, including the unsworn statement of Sergeant Gosner, because unsworn testimony does not satisfy the requirements of Rule 56(e). Finally, Defendants move to strike the declaration of George Kolin attaching the deposition transcript of Sergeant Gosner, because Plaintiff failed to reference any page or line numbers in his response memorandum.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Much of Plaintiff's declaration consists of conclusory or speculative statements, and is not based on personal knowledge. For example, Plaintiff states that Sergeant Gosner either "made up" allegations made by a confidential informant, or knew the informant was "outright lying." Dkt. 12 at 3. The Court grants Defendants' request to strike the following paragraphs, because these statements are not based on personal knowledge: 11, 12, 13, 14, 15, 16, 21, 22, 23, 30, 31, 32, 33, 34, 36, 37, 39, 40, 41, 42,

ORDER - 14

44, 45, 51, and 53. *See* Fed. R. Evid. 602. In addition, paragraphs 10, 24, 25, and 35 are partially stricken, with the exception of the following statements, because they are based on personal knowledge:

    1. "I had no such 'grow operation.'" ¶ 10.

    2. "Eight months out of the year, that spot where Defendant Gosner placed the asterisk [on the map] is a marsh." ¶ 24.

    3. "[T]he barrels are not even south of my driveway, and the fire line is clearly as wide and clear and runs along the south of the SW corner, as is my Driveway." ¶ 25.

    4. "South of my Driveway and north of my property line sat 4 trees at least 100 foot tall, 5 more trees at least 50 foot tall, and 9 more trees at least 30 foot tall." ¶ 35.

Paragraphs 53 at 56 are not stricken: paragraph 53 contains a statement based on personal knowledge, and paragraph 56 contains Plaintiff's beliefs about the nature of the charges filed.

The unsworn statement of Sergeant Gosner is also stricken.[5] *See Orr*, 285 F.3d at 773-74. Sergeant Gosner's deposition is not stricken. However, the Court finds that Plaintiff failed to cite to any page numbers of this deposition, or any other document in 172 pages of documents filed, in support of his response. The Court is not required to "scour the record in search of a genuine issue of material fact" when a plaintiff has failed to assist it by properly citing evidence in the record. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).[6]

---

[5] The Court has nonetheless reviewed this unsworn statement. Plaintiff did not direct the Court to any statement in this document that would change the outcome of Defendants' motion for summary judgment.

[6] In *Keenan*, the Ninth Circuit stated, "[w]here this court has succeeded in locating the documents cited, it has repeatedly found that [the non-moving party] has referred us to conclusory allegations made in her own affidavits and statements of fact presented to the district court, and to irrelevant or inadmissible evidence." *Keenan*, 91 F.3d at 1279. Similarly, in this action, the main document referenced (though not by page number) in Plaintiff's brief is replete with conclusory, inadmissible statements.

ORDER - 15

**IV. ORDER**

Therefore, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Dkt. 10) is **GRANTED**, and Plaintiff's claims are **DISMISSED with prejudice**.

DATED this 10th day of August, 2009.

	*[signature]*
	BENJAMIN H. SETTLE
	United States District Judge